UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CONAGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-1268 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| YECYHUN WANG and | ) | |
| ARCH INNOTEK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.     Plaintiff, Conagen Inc. ("Conagen" or "Plaintiff"), files this action against Mr. Yechun ("Matt") Wang and Arch Innotek, LLC ("Wang," "Arch," or "Defendant(s)").  In support of its claims, Conagen alleges the following:

## PRELIMINARY STATEMENT

2.     Plaintiff Conagen is a Massachusetts corporation that has previously utilized office and business locations in the State of Missouri.  Conagen was a registered business in the State of Missouri from 2010 until 2017.  During the relevant periods related to activities detailed in this Complaint, Conagen and its employees developed highly confidential, proprietary information, know-how, products and processes related to the development and use of recombinant microorganisms for production of desired natural compounds including carotenoids and their metabolites, such as alpha-ionone and beta-ionone, both of which are useful as flavor and fragrance agents ("Conagen Highly Confidential Technology").  Conagen considers, protects and treats the Conagen Highly Confidential Technology as valuable, proprietary trade secret information.

3.     Conagen used and continues to use technologically advanced techniques including *inter alia* recombinant genetic techniques that introduce nucleic acids encoding heterologous

1

proteins into microorganisms, thereby creating proprietary recombinant microbial cell strains that are able to produce biosynthetically desired natural compounds, including various carotenoids, such as alpha-ionone and beta-ionone. The resulting recombinant microbial cell strains can be used to make commercially relevant amounts of various natural compounds including specifically alpha-ionone and beta-ionone.

4.     Conagen has invested significant time, effort, and financial resources to develop, refine and perfect the Conagen Highly Confidential Technology, as well as to develop new technologies, methods, and products related thereto.

5.     In 2012, Conagen hired Defendant Wang as a senior scientist to assist it in the continued development of Conagen Highly Confidential Technology. In his position as a Senior Scientist, Conagen disclosed to him its Highly Confidential Technology and Wang was involved in developing new technologies, methods, and products related thereto.

6.     Wang principally performed his work for Conagen at the Bio-Research & Development Growth (BRDG) Park at the Donald Danforth Plant Science Center in St. Louis, Missouri.

7.     On January 2, 2012, in connection with his Conagen employment and as a condition of employment, Wang executed an Employment Agreement.  A true and correct copy of the executed Wang Employment Agreement is attached as Exhibit A hereto.

8.     During his employment with Conagen, Wang was responsible for and performed duties related to the development and use of recombinant microorganisms, including the yeast *Yarrowia lipolytica,* for production of desired natural compounds including carotenoids, such as beta-carotene, alpha-ionone, beta-ionone, lycopene, zeaxanthin, neoxanthin, canthaxanthin, astaxanthin, and the like.

9.      Wang had direct access to, worked on and/or was directly involved with the development of Conagen Highly Confidential Technology during his employment at Conagen.

10.      Wang left Conagen in 2014, and took a founding position at Defendant Arch in 2014, and became Chief Scientific Officer of Arch in approximately 2015.  Based on information and belief, Wang is currently employed by Arch as Chief Scientific Officer.

11.      Based on information and belief, during the course and scope of his employment at Arch, Wang improperly disclosed Conagen Highly Confidential Technology that he acquired during his employment with Conagen to Arch.

12.      During the course and scope of Wang's employment at Arch, Arch improperly obtained Conagen Highly Confidential Technology from Wang.  Arch and/or Wang continue to improperly use and have disclosed Conagen Highly Confidential Technology to the public, for example, in the filing of a series of patent applications and obtaining at least one patent.

13.      On March 23, 2015, Arch filed a U.S. Provisional Patent Application No. 62/137,154 ("the '154 priority application") titled "Methods of Making Carotenoids and Their Derivatives." This application became the priority application for International Application No. PCT/US2016/023784 ("the PCT application") titled "Compositions and Methods of Biosynthesizing Carotenoids and Their Derivatives," which Arch filed on March 23, 2016.  On September 22, 2017, Arch filed U.S. Patent Application No. 15/560,951 ("the '951 application") titled "Compositions and Methods of Biosynthesizing Carotenoids and Their Derivatives," as a national phase application stemming from the PCT application, which issued as U.S. Patent No. 10,364,434 ("the '434 patent"). Arch also filed a divisional application, U.S. Application No. 16/439,926 ("the '926 application"), stemming from the '951 application on June 13, 2019, which

is currently pending. The '154 priority application, the PCT application, the '951 application, and the '926 application contain information misappropriated by Wang.

14. On October 18, 2016, Arch filed a U.S. Provisional Patent Application No. 62/409,599 ("the '599 priority application") titled "Methods of Making Xanthophylls in Recombinant Yeast." This application became the priority application for U.S. Patent Application No. 15/694,443 ("the '443 application") titled "Compositions and Methods of Biosynthesizing Xanthophylls," which is currently pending. The '599 priority application and the '443 application contain information misappropriated by Wang.

15. On February 11, 2019, Arch filed a U.S. Provisional Patent Application No. 62/804,078 ("the '078 priority application") titled "Compositions and Methods of Biosynthesizing Carotenoids and Their Derivatives." This application became the priority application for International Application No. PCT/US2020/017753 ("the '753 application") titled "Compositions and Methods of Biosynthesizing Carotenoids and Their Derivatives," which Arch filed on February 11, 2020, which is currently pending. The '078 priority application and the '753 application contain information misappropriated by Wang.

16. Wang is listed as the sole inventor on each of the patent applications and the '434 patent. Arch is listed as the sole Applicant/Assignee on each of the patent applications and the '434 patent.

17. Inventorship is improper on each of the patent applications and the '434 patent. Dr. Oliver (Xiaodan) Yu ("Yu"), the founder of Conagen, is a co-inventor of at least one or more claims of each of the patent applications and the '434 patent, because at Conagen Wang worked directly under Yu, and Yu conceived, actually/constructively reduced to practice, monitored Wang's progress on different carotenoid projects and/or gave technical suggestions and

4

instructions concerning the subject matter of at least one claim of each of the patent applications and the '434 patent.

18.     The subject matter contained in the '434 patent, the '443 application, and the '753 application, as well as the underlying and continuing patent applications filed by Arch, were either developed and invented during Wang's employment at Conagen or derived directly from subject matter that was developed and invented during Wang's employment at Conagen, and such intellectual property is properly owned by Conagen by Wang's previous assignment of such intellectual property to Conagen in the Employment Agreement.  A copy of the '434 patent is attached hereto as Exhibit B. A copy of the underlying '951 application published as U.S. 2018/0080031 is attached as Exhibit C. A copy of the '443 application published as U.S. 2018/0105839 is attached as Exhibit D. A copy of the '753 application published as WO 2020/167834 is attached as Exhibit E.

19.     By the exercise of reasonable diligence on or about September 1, 2018, Conagen became aware of Arch's patenting activities based on Wang's improper use and disclosure of Conagen Highly Confidential Technology disclosed in a scientific publication that published on September 1, 2018, entitled "Engineering the oleaginous yeast *Yarrowia lipolytica* to produce the aroma compound B-ionone." A copy of the scientific publication is attached hereto as Exhibit F.

20.     By the continuing exercise of reasonable diligence on or about July 15, 2020, Conagen became aware that Wang disclosed additional Conagen Highly Confidential Technology disclosed in a scientific publication that published on February 21, 2020, entitled "Application of Stable Isotope Tracing to Elucidate Metabolic Dynamics During *Yarrowia lipolytica* a-Ionone Fermentation." A copy of the scientific publication is attached hereto as Exhibit G.

21.     By the continuing exercise of reasonable diligence on or about September 8, 2020, Conagen became aware of Arch's additional patenting activities based on Wang's improper use and disclosure of Conagen Highly Confidential Technology in the '753 application.

22.     There may be additional patent applications that Arch and Wang have filed, but have not published as of the filing of this Complaint, that contain Conagen Highly Confidential Technology. To the extent Conagen later becomes aware of any additional patent filings by Arch and Wang that disclosure Conagen Highly Confidential Technology, the allegations set forth herein also apply to those currently unpublished patent applications.

23.     Arch and Wang have improperly obtained, appropriated, and used Conagen Highly Confidential Technology without Plaintiff's consent.

24.     Arch and Wang have improperly filed patent applications, listed improper inventor names on such applications, and/or improperly obtained patents containing Conagen Highly Confidential Technology, by misappropriating and improperly using Conagen Highly Confidential Technology without Plaintiff's consent.

25.     Conagen seeks return of the Conagen Highly Confidential Technology, and any products thereof, removal of all such Conagen Highly Confidential Technology, and any products thereof, from Arch's possession, permanent injunctive relief preventing Arch and Wang from making, using, selling, disclosing further or marketing any of the Conagen Highly Confidential Technology, and any products thereof, monetary damages, and other appropriate curative orders from the Court to correct ownership of the (purported) Arch patent(s) which were improperly derived from Conagen during Wang's employment at Conagen.

## THE PARTIES

26.     Plaintiff, Conagen Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business at 15 DeAngelo Drive, Bedford, Massachusetts 01730.

27.     Defendant, Wang, is an individual that, upon information and belief, has worked in and/or conducted substantial business within St. Louis, Missouri, for Defendant, Arch.

28.     Upon information and belief, Wang resides at 207 Luna Trail Ext, Southbury, Connecticut 06488.  Upon information and belief, Wang recently also resided at 395 Gateshead Dr., Manchester, Missouri 63011 (the current address for Arch's registered office, as alleged below).

29.     Wang is listed as the sole inventor on several recent patent filings related to claims within this lawsuit; Wang listed his address on the Application Data Sheets filed with the United States Patent and Trademark Office ("USPTO") as: "c/o Arch Innotek 4320 Forest Park Ave Suite 303, Saint Louis, Missouri 63108, USA."  A copy of this address representation to the USPTO is attached as Exhibit H.  Based on information and belief, Wang also continues to conduct business within the State of Missouri.

30.     Wang is a former employee of Conagen. Wang was employed by Conagen from January 2, 2012 to January 24, 2014.  Wang, upon information and belief, is currently the Chief Scientific Officer of Arch.

31.     Arch is a Missouri Limited Liability Company organized and existing under the laws of the State of Missouri, with its principal place of business at 4320 Forest Park Avenue, St. Louis, Missouri 63108.  On information and belief, the registered agent and office for Arch is currently: Qiusha Guo and 395 Gateshead Dr., Manchester, Missouri 63011, respectively.  On

information and belief, Arch also has a principal place of business at 400 Farmington Ave., R1703, Farmington, Connecticut 06032-1913.

## JURISDICTION AND VENUE

32.     The Court has subject-matter jurisdiction over Counts I and II of Conagen's claims pursuant to 28 U.S.C. § 1331, as the claims relate to a civil action arising under the Constitution, laws, or treaties of the United States.

33.     The Court has subject-matter jurisdiction over Count I of this action under 18 U.S.C. § 1836, as the claim relates to a violation of the federal Defend Trade Secrets Act ("DTSA").

34.     The Court further has subject-matter jurisdiction over Count II of this action under 28 U.S.C. § 1338, as the claim relates to the Patent Laws of the United States.

35.     The Court has supplemental or pendent jurisdiction over Conagen's state-law and common law claims of Counts III, IV, V and VI pursuant to 28 U.S.C. § 1367, because such claims all share a common nucleus of operative facts with Conagen's claims under Counts I and II as described below, and that they form a part of and are intertwined with the same case or controversy.

36.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1332. Conagen is a corporate citizen of Massachusetts and Arch is a corporate citizen of Missouri.  The  amount in controversy exceeds $75,000 exclusive of interest and costs, and the claim(s) arose in this district.

37.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint

occurred in this judicial district and/or a substantial part of the property, including intellectual property, that is the subject of this action is situated within this judicial district.

38.     This Court further has personal jurisdiction over Wang based on Mo. Rev. Stat. § 506.500.1, and the due process which is afforded to Wang.

39.     Pursuant to Mo. Rev. Stat. § 506.500.1, this Court has personal jurisdiction over Wang based on: (1) Wang conducting business with and as Chief Scientific Officer of Arch, which is a Missouri Limited Liability Company organized and existing under the laws of within the State of Missouri; (2) Wang entering into a contract within the State of Missouri; and (3) Wang has committed unlawful acts within the state of Missouri.

40.     With respect to due process afforded to Wang, sufficient minimum contacts exist between Wang and the State of Missouri through his employment and significant participation in activities with Missouri-based Arch, such that the initiation and maintenance of this case does not offend traditional notions of fair play and substantial justice.  Sufficient contacts exist between Wang and the State of Missouri such that Wang should reasonably anticipate being subject to this court's jurisdiction in the State of Missouri.

41.     This Court has personal jurisdiction over Arch because Arch is incorporated in the State of Missouri and is therefore considered a resident of the State of Missouri; Arch has committed unlawful acts within the state.

## FACTUAL ALLEGATIONS

42.     Plaintiff incorporates, repeats, and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 41 of the Complaint.

<u>Conagen Highly Confidential Technology and Protected Trade Secret Information</u>

43.     Conagen was co-founded in 2010 by Dr. Oliver Yu, a noted biochemist and a strong believer in green technologies, with the mission to produce natural compounds more sustainably. Over the past decade, Dr. Oliver Yu and his team at Conagen have invested and continue to invest heavily in metabolic engineering research efforts to develop Conagen Highly Confidential Technology and Protected Trade Secret Information. After years of continuing efforts, the resulting Conagen Highly Confidential Technology and Protected Trade Secret Information have made Conagen a leader in cutting-edge bio-manufacturing, allowing Conagen to produce safe and high-quality natural compounds for various food, nutrition, pharmaceutical, and renewable material applications. Conagen's business success depends critically upon its ability to exploit Conagen Highly Confidential Technology and Protected Trade Secret Information exclusively and protect them against actual and potential competitors.

<u>Wang's Employment and Employment Agreement with Conagen</u>

44.     On or about January 2, 2012, Wang began working for Conagen, as a senior scientist to assist in the continued development of Conagen Highly Confidential Technology, and to develop new technologies, methods, and products related thereto.

45.     Wang primarily performed his work for Conagen in St. Louis County, Missouri, at the BRDG Park.

46.     In connection with his Conagen employment, and as a requirement of initial and continued employment, Wang executed an Employment Agreement ("the Wang Employment Agreement").  See, <u>Exhibit A</u>, incorporated in its entirety by reference.

47.     In the Employment Agreement, Wang agreed to the following provisions which are particularly relevant to this complaint:

a.   "'Trade Secret' means any information not generally known to the public, information designated as confidential or is similarly designated, information proprietary to Employer and any third party information which Employer is obligated to keep confidential, including, without limitation, any information related to any method of operations, procedures, process, formula, developments, suppliers, employees, finance, business plans, and potential, current and past customers, particularly sales leads, customer list and customer profile." (Exhibit A, ¶ 1.2, Definitions).

b.   That "[a]ll information disclosed to [him], or to which [he has] access, whether originated by [him] or by others, during the period of Employment is presumed to be Trade Secret." (*Id.*).

c.   That "Trade Secret has been developed or obtained by Employer upon investment of significant time, effort and expense, and the Trade Secret provides Employer with a significant competitive advantage and any breach of this Agreement would result in immediate and irreparable harm to Employer and others." (Exhibit A, ¶ 3.1, Confidentiality).

d.   He "will keep confidential and hold in trust for Employer all Trade Secret, during or after [his] Employment, and not disclose Trade Secret without the express written approval of a duly authorized officer of Employer." (Exhibit A, ¶ 3.2, Confidentiality).

e.   He "will not use any Trade Secret except for the benefit of Employer during or after [his] Employment." (*Id.*).

f.   That "[u]pon termination of Employment, [he] will immediately deliver to Employer all Trade Secret recorded in any medium, apparatus, tools, papers, notebooks and any other materials furnished to me by Employer, or which were prepared, obtained or made, in whole or in part, by [him] during the course of [his] Employment."; (Exhibit A, ¶ 3.3, Confidentiality).

g.   That "[w]ith respect to IP made, authored, conceived, or first actually reduced to practice by [him], either solely or jointly with others, during [his] Employment," he would "keep accurate, complete, and timely records of such IP, which records are Employer's property and [are to] be retained on Employer's premises," "promptly and fully disclose and describe to Employer in writing such IP." (Exhibit A, ¶ 4.1, Ownership).

h.   That "[t]o the extent that such rights do not automatically vest in Employer upon creation, [he will] assign and hereby assign[s] to Employer sole and exclusively rights and title to such IP throughout the world, and to applications for copyright, patent, and mask work protection, and to all rights granted upon such applications in relation to such IP without further consideration." (*Id.*).

48.   While employed at Conagen, Wang was responsible for and performed duties

related to the development and use of recombinant microorganisms, including the yeast *Yarrowia*

11

*lipolytica,* for production of natural compounds including carotenoids, such as beta-carotene, alpha-ionone, beta-ionone, lycopene, zeaxanthin, neoxanthin, astaxanthin, canthaxanthin, and the like.

49.     Wang left his employment at Conagen on or about January 24, 2014.  Per his Employment Agreement, Wang was obligated to not use and to keep Conagen Highly Confidential Technology trade secrets confidential.

Wang and Arch's Misappropriation and Improper Use of Conagen Trade Secrets and Highly Confidential Information

50.     On or about January 24, 2014, Wang's employment with Conagen ended.  Later in 2014, Wang founded Arch.

51.     According to Arch's web page (attached as Exhibit I, incorporated in its entirety by reference), Arch "was founded by a leading scientist and business executive in 2014," the same year Wang left Conagen.

52.     Arch is a competitor of Conagen.

53.     Arch is in the business of "engineering microorganisms to produce . . . high-value molecules for food, feed, pharmaceutical and cosmetics industries . . . ."  See, Exhibit I.

54.     Arch currently sells carotenoids including astaxanthin, lycopene, zeaxanthin, alpha-carotene, delta-carotene, epsilon-carotene, and others. See, Exhibit I, Products.

55.     On or about September 1, 2018, Conagen first became aware that Wang, based on information and belief, had improperly disclosed at least the following Conagen Highly Confidential Technology trade secrets:

a) a recombinant microorganism, specifically, a *Yarrowia lipolytica* cell strain, engineered to include a carotene cleavage dioxygenase gene from *Osmanthus fragrans* (OfCCD1) for making beta-ionone (see e.g., Exhibit F, Abstract and page 3);

12

b) a recombinant microorganism, specifically, a *Yarrowia lipolytica* cell strain, engineered to include a fusion gene of farnesyl pyrophosphate synthase (FPPS) and geranyl pyrophosphate synthase (GGPPS) (a FPPS::GGPPS fusion gene) for making beta-ionone (*Id.*);

c) methods of plasmid construction to integrate an OfCCD1 gene into the chromosome of a *Yarrowia lipolytica* cell strain for making beta-ionone (see, Exhibit F, page 10);

d) methods of plasmid construction to integrate a FPPS::GGPPS fusion gene the chromosome of a *Yarrowia lipolytica* cell strain for making beta-ionone (see, Exhibit F, page 10);

e) a recombinant microorganism, specifically, *Yarrowia lipolytica*, engineered to include a nucleic acid construct including a nucleic acid sequence encoding a lycopene epsilon cyclase from *Lactuca sativa* (LsLCYE) and a nucleic acid sequence encoding a carotenoid cleavage dioxygenase for making alpha-ionone (see e.g., Exhibit C, Examples 3 and 4);

f) methods of using and constructing intron-containing transcriptional elongation factor (TEF promoters (TEFIN)), including providing a nucleic acid expression construct including a nucleic acid sequence encoding a lycopene cyclase epsilon; and a nucleic acid sequence encoding a carotenoid cleavage dioxygenase enzyme, wherein the nucleic acid sequences are operably linked to an intron-containing transcriptional elongation factor TEF promoter (TEFIN) (see e.g., Exhibit C, Example 5 and paragraphs [0100]-[0107]);

g) a recombinant microorganism, specifically, *Yarrowia lipolytica*, engineered to include a nucleic acid construct including a nucleic acid sequence encoding a lycopene epsilon cyclase from *Lactuca sativa* (LsLCYE) and a nucleic acid sequence encoding a carotenoid cleavage dioxygenase, where the nucleic acid sequences are operably linked to a TEFIN promoter, for making alpha-ionone (see e.g., Exhibit C, paragraphs [0100]-[0107] and [0119]-[0126]);

h) a recombinant microorganism, specifically, *Yarrowia lipolytica*, engineered to include a nucleic acid expression construct including a nucleic acid sequence encoding a lycopene cyclase epsilon; and a nucleic acid sequence encoding a carotenoid cleavage dioxygenase enzyme, wherein the nucleic acid sequences are operably linked to an export protein promoter (EXP1) (see e.g., Exhibit C, paragraphs [0100]-[0107] and [0119]-[0127]); and

i) methods of constructing a FPPS::GGPPS fusion gene and expressing a FPPS::GGPPS fusion protein for increasing the production of alpha-ionone (see e.g., Exhibit C, Example 6, and paragraph [0074]); and

j) a recombinant microorganism, specifically, *Yarrowia lipolytica*, engineered to include a nucleic acid construct including a nucleic acid sequence encoding a lycopene epsilon cyclase from *Lactuca sativa* (LsLCYE), a nucleic acid sequence encoding a carotenoid cleavage dioxygenase, a nucleic acid sequence encoding a geranylgeranyl disphosphate synthase (GGPPS) enzyme fused in frame with a farnesyl diphosphate synthase enzyme (FPPS), where the nucleic acid sequence is operably linked to one or more expression control sequences (e.g., a TEFIN promoter) (see e.g., Exhibit C, paragraph [0152]).

56.    On or about July 15, 2020 and up to the date of this filing, Conagen became aware that Wang, based on information and belief, had improperly disclosed at least the following additional Conagen Highly Confidential Technology trade secrets:

a)    a recombinant microorganism, specifically, *Yarrowia lipolytica*, engineered to include a lycopene cyclase epsilon from *Lactuca sativa* (LsLCYe) and a carotene cleavage dioxygenase from *Osmanthus fragrans* (OfCCD1), for the production of alpha-ionone (see e.g., Exhibit G, pages 2-3 and referring to the '951 application; see also Exhibit E, paragraphs [0068]-[0080]).

57.     Based on information and belief, Wang has improperly used, revealed, and/or disclosed Conagen Highly Confidential Technology trade secret information that he gained through his employment with Conagen, in direct contravention of his promises of confidentiality and the restrictions imposed by the terms of his Employment Agreement (Exhibit A).

58.     Based on information and belief, Wang has passed Conagen Highly Confidential Technology trade secret information to Arch, and Wang/Arch are now preparing to use, or are currently commercially utilizing such information to the detriment of Conagen.

59.     By the exercise of reasonable diligence on or about September 1, 2018, Conagen discovered that Wang/Arch had filed the '951 application with the United States Patent & Trademark Office ("USPTO") entitled "Compositions and Methods of Biosynthesizing Carotenoids and Their Derivatives"; see, Exhibit C.

60.     The specification and claims of the '951 application describe recombinant microorganisms and methods for producing carotenoids and carotenoid derivatives, including α-ionone and beta-ionone, which contain Conagen Highly Confidential Technology trade secret information and Intellectual Property.

61.     By the continuing exercise of reasonable diligence on or about September 1, 2018, Conagen discovered that Wang/Arch had filed the '443 application with the United States Patent & Trademark Office ("USPTO") entitled "Compositions and Methods of Biosynthesizing Xanthophylls"; see, Exhibit D.

62.     The specification and claims of the '443 application describe recombinant microorganisms and methods for producing carotenoids and carotenoid derivatives, which contain Conagen Highly Confidential Technology trade secret information and Intellectual Property.

63.     By the continuing exercise of reasonable diligence on or about September 8, 2020, Conagen discovered that Wang/Arch had filed the '753 application with the USPTO entitled "Compositions and Methods of Biosynthesizing Carotenoids and Their Derivatives"; see, Exhibit E.

64.     The specification and claims of the '753 application describe recombinant microorganisms and methods for producing carotenoids and carotenoid derivatives, which contain Conagen Highly Confidential Technology trade secret information and Intellectual Property.

65.     The '951 application published on March 22, 2018, and the '443 application published on April 19, 2018.

66.     Upon its discovery and review of the published '951 application, Conagen learned that Conagen's research and development, processes, confidential and proprietary information, and inventions were disclosed and/or claimed in the application, as well as the other patent applications that claim priority to the '154 priority application (Exhibit J).

67.     Upon its discovery and review of the published '443 application, Conagen learned that Conagen's research and development, processes, confidential and proprietary information, and inventions were disclosed and/or claimed in the application, as well as the '599 priority application (attached as Exhibit K).

68.     Upon its discovery and review of the published '753 application, Conagen learned that Conagen's research and development, processes, confidential and proprietary information, and inventions were disclosed and/or claimed in the application, as well as the '078 priority application (attached as Exhibit L).

69.     The information described in the '951 application (which resulted in the '434 patent) and the '926 application, as well as the other patent applications assigned by Wang to Arch

16

that claim priority to the '154 priority application, contain Conagen Highly Confidential Technology that Wang learned, made, or conceived of during his employment under contract with Conagen.

70.     The information described in the '443 application, as well as the '599 priority application, contains Conagen Highly Confidential Technology that Wang learned, made, or conceived of during his employment under contract with Conagen.

71.     The information described in the '753 application, as well as the '078 priority application, contains Conagen Highly Confidential Technology that Wang learned, made, or conceived of during his employment with Conagen.

72.     The '434 patent and the '926 application (by way of the assignment recorded in the '434 patent, see, Exhibit M) are improperly assigned to Arch.

73.     The '443 application and the '599 priority application are improperly assigned to Arch (see, Exhibit M).

74.     On information and belief, the '753 application and the '078 priority application are improperly assigned to Arch.

75.     According to the terms of the Wang Employment Agreement, Conagen is the proper owner of the '434 patent, the '926 application, and any other patent applications, U.S. or foreign, that claim priority to the '154 priority application; the '443 application, and any other patent applications, U.S. or foreign, that claim priority to the '599 priority application; and the '753 application, and any other patent applications, U.S. or foreign, that claim priority to the '078 priority application.

76.     Upon information and belief, Wang improperly disclosed Conagen Highly Confidential Technology trade secret information to Arch for the purpose *inter alia* of filing patent

applications directed to recombinant microorganisms and methods for producing carotenoids and carotenoid derivatives, including the '951,'443, and '753 applications.

77.     Wang and/or Arch will continue to improperly reveal, provide, disclose and/or use Conagen Highly Confidential Technology trade secret information to the detriment of Conagen if they are not enjoined from doing so.

78.     Disclosure and/or use of any of Conagen Highly Confidential Technology trade secret information by Wang and/or Arch has resulted and will continue to result in irreparable harm to Conagen, have a significant impact on Conagen's finances, result in a substantial loss to their competitive advantage in the marketplace, and put Conagen's future success in jeopardy.

79.     Wang's and/or Arch's use, dissemination, and filing of patent applications containing Conagen Trade Secret Information was not authorized by Conagen, and these acts violated both Wang's Employment Agreement and Conagen's company policies regarding such information.

80.     Wang's and/or Arch's improper conduct included misappropriation of a wide range of proprietary, confidential, and sensitive Conagen information regarding Conagen's technology, products, operations, business plans/strategy, and other highly confidential information.

81.     For example, Wang and/or Arch disclosed Conagen Highly Confidential Technology in a number of patent filings, as described above.

82.     As another example, Wang and/or Arch disclosed Conagen Highly Confidential Technology in scientific articles that were published in 2018 and 2020.

83.     As another example, upon information and belief, Wang and/or Arch began selling carotenoid products that were developed using Conagen's proprietary information and processes

on the Arch website at or around February 2019. Copies of archived Arch website product pages are attached as Exhibit N hereto.

84.     By way of further example, based on information and belief, Wang improperly and without Conagen's permission took one or more of the following Conagen Tangible Property materials:

    a)  one or more recombinant *Yarrowia lipolytica* strains including nucleic acid expression construct(s) that include one or more of the following: a lycopene epsilon cyclase gene from *Lactuca sativa* (LsLCYe); a carotene cleavage dioxygenase gene from *Osmanthus fragrans* (OfCCD1); an intron-containing transcriptional elongation factor TEF promoter (TEFIN); an export protein promoter (EXP1); and a FPPS::GGPPS fusion gene; and/or

    b)  one or more nucleic acid expression constructs that include one or more of the following: a lycopene epsilon cyclase gene from *Lactuca sativa* (LsLCYe); a carotene cleavage dioxygenase gene from *Osmanthus fragrans* (OfCCD1); an intron-containing transcriptional elongation factor TEF promoter (TEFIN); an export protein promoter (EXP1); and a FPPS::GGPPS fusion gene.

85.     At all relevant times, Conagen has taken reasonable measures to preserve the confidentiality of these and other confidential materials misappropriated by Wang (and now his current employer Arch), including restricted access to lab notebooks and projects, limited disclosure of information externally, agreed confidentiality, password protections on computers, education of staff regarding confidentiality procedures, facility security cameras and building passes, and other safeguarding measures to identify suspicious access and use of Conagen confidential information and technology.

86.     The sufficiency of these measures is evinced by there being no instance of trade secret misappropriation of any Conagen Highly Confidential Technology in the past by any of Conagen's present or past employees until Wang misappropriated the Conagen Highly Confidential Technology set forth herein.

## COUNT I:
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE FEDERAL DEFEND TRADE SECRETS ACT ("DTSA")

87.     Plaintiff incorporates, repeats, and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 86 of the Complaint.

88.     Under the DTSA, the "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).

89.     The DTSA defines the term "trade secrets" to include "all forms and types of" information, regardless of how it is stored, if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information[.]"  18 U.S.C. § 1839(3).

90.     The Conagen Highly Confidential Technology, including Conagen's secret processes that the Defendants included in the patent applications leading to and stemming from the '434 patent and '433 application constitute trade secrets within the meaning of the DTSA.

91.     Upon information and belief, Defendants misappropriated Conagen Highly Confidential Technology when Defendants included information regarding this technology in patent applications filed beginning on March 23, 2015 with the filing of the '154 priority application, and continued with the filing of the '951 application on September 22, 2017, which resulted in the '434 patent as well as on October 18, 2016 with the filing of the '599 priority application and continuing with the filing of the '443 application.

92.     Defendants continue to misappropriate Conagen Highly Confidential Technology under the DTSA with the recent filing of the '926 application on June 13, 2019, as well as the filing of the '443 application, both of which are currently pending and under examination before the USPTO.

93.     Defendants continue to misappropriate Conagen Highly Confidential Technology under the DTSA with the public disclosure, sales, and/or offers for sale of recombinant microorganisms, including the yeast *Yarrowia lipolytica,* for production of desired natural compounds useful as flavors and fragrances such as limonene, resveratrol, pterostilbene, and carotenoids, including alpha-carotene, beta-carotene, delta-carotene, epsilon-carotene, alpha-ionone, beta-ionone, lycopene, zeaxanthin, neoxanthin, astaxanthin, and the like.

94.     Defendants misappropriated these trade secrets within the meaning of the DTSA.

95.     Conagen owns the trade secrets misappropriated by Defendants.

96.     Conagen has taken reasonable measures to keep Conagen Highly Confidential Technology trade secret information secret.

97.     Plaintiff derives significant economic value, both actual and potential, from Conagen Highly Confidential Technology trade secret information not being generally known to, nor readily ascertainable by, other individuals or companies in the industry who could derive significant economic value from their disclosure or use of the information.

98.     Conagen Highly Confidential Technology trade secret information, their confidential processes, products, business information and strategy relate to products and/or services that are used in, or intended for use in, interstate and foreign commerce.

99.     Conagen Highly Confidential Technology trade secret information has been improperly used, released, or disclosed by Defendants through improper means, with an improper

21

purpose, and in conflict with the business interests of Plaintiff, without the consent or authorization of Plaintiff and without lawful justification.

100.    At the time of use, release, and/or disclosure, Defendants knew or had reason to know that Wang's knowledge of Conagen Highly Confidential Technology trade secret information was acquired under circumstances giving rise to a duty to maintain its secrecy and/or limit its use.

101.    Defendants took such actions willfully, maliciously, and/or in reckless disregard for Conagen's rights, in that Defendants knew, or had reason to know, that they were not authorized to use Conagen Highly Confidential Technology trade secret information in competition with the Plaintiff.

102.    Defendants took such actions willfully and/or in reckless disregard for Conagen's rights, in that the Defendants knew, or had reason to know, that they were not authorized to use Conagen Highly Confidential Technology trade secret information in competition with Plaintiff outside the scope of and in direct contradiction and violation of Wang's Employment Agreement.

103.    Defendant's misappropriation of Conagen Highly Confidential Technology trade secret information is continuing and ongoing.

104.    As a result of Defendant's misappropriation of Conagen Highly Confidential Technology trade secret information, Plaintiff has and continues to suffer actual losses in an amount to be determined at trial.  Plaintiff has and continues to also suffer irreparable harm if Defendants' misconduct is not enjoined.

105.    Pursuant to 18 U.S.C. § 1836(b)(3)(C), Plaintiff is entitled to exemplary damages for Defendants' willful and malicious misappropriation of Conagen Highly Confidential Technology trade secret information.

106.     Pursuant to 18 U.S.C. § 1836(b)(3)(D), Plaintiff is entitled to recovery of their attorney's fees and costs because of Defendants' willful and malicious misappropriation of Conagen's Highly Confidential Technology trade secret information.

107.     Plaintiff seeks a judgment against Wang and/or Arch for compensatory and exemplary damages, an award of unjust enrichment, permanent injunctive relief, prejudgment interest, and such other relief as the Court deems just and proper.

<b><u>COUNT II:</u></b><br><b><u>DECLARATORY JUDGMENT OF OWNERSHIP OF U.S. PATENT NO.</u></b><br><b><u>10,364,434 AND U.S. PATENT APPLICATION NOS. 16/439,926 AND 15/694,443</u></b>

108.     Plaintiff incorporates, repeats and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 107 of the Complaint.

109.     As a result of Defendants' improper actions, there is a substantial and continuing justiciable controversy between Plaintiff and Defendants concerning inventorship and ownership of U.S. Pat. No. 10,364,434 ("the '434 patent,"), U.S. Patent Application Nos. 16/439,926 ("the '926 application") and 15/694,443 ("the '443 application"), and International Application No. PCT/US2020/017753 ("the '753 application"), including any patents, U.S. or foreign, issuing from or deriving from any of the foregoing patent applications and/or Conagen Highly Confidential Technology trade secret information, and the right to control the maintenance, enforcement of, and/or any remaining prosecution of such applications.

110.     Pursuant to 28 U.S.C. § 2201 et seq., Plaintiff seeks a declaratory judgment that they own the '434 patent, the '926 application, the '443 application, and the '753 application, as well as any patent applications and/or patents, U.S. or foreign, issuing from or deriving from any Conagen Highly Confidential Technology trade secret information, and/or Defendants' improper possession of Plaintiff's Intellectual Property.

111.    Upon information and belief, Wang disclosed Conagen Highly Confidential Technology to Arch.  Upon information and belief, the information contained in the '154 priority application, which describes methods of making carotenoids and their derivatives, including α-ionone, was obtained, conceived, and/or made by Wang during the period of his employment with Plaintiff. In addition, upon information and belief, the information contained in the '599 priority application, which describes methods of making carotenoids and their derivatives, was obtained, conceived, and/or made by Wang during the period of his employment with Plaintiff. Further, upon information and belief, the information contained in the '078 priority application, which describes methods of making carotenoids and their derivatives, including α-ionone, was obtained, conceived, and/or made by Wang during the period of his employment with Plaintiff.

112.    Upon information and belief, as a result of Defendants' improper actions in filing the '154 priority application and prosecuting the derivative '951 application (which resulted in the '434 patent) and the pending '926 application, as well as filing the'599 priority application and prosecuting the derivative '443 application, and filing the '078 priority application and prosecuting the derivative '753 application, based in whole or in part on Conagen Highly Confidential Technology trade secret information, obtained by Wang during the course of his employment with Plaintiff, and pursuant to contractual obligations, Conagen is the rightful owner of all patentable subject matter disclosed and/or claimed therein, pursuant to the Patent Laws of the United States and Missouri law.

113.    By reason of Defendants' alleged improper actions, Conagen has been and will continue to be irreparably harmed if Defendants are permitted to continue to control the '434 patent and the prosecution of the '926 application, the '443 application, and the '753 application, and/or the prosecution of any related U.S. Applications, including any other unpublished patent

applications that have been filed by Defendants that contain Conagen Highly Confidential Technology. Conagen should be allowed to control such prosecution as the true and rightful owners of the '926 application, the '443 application, and the '753 application. Further and alternatively, Conagen seeks a declaration and order that Arch and/or Wang assign all their rights or ownership interest in the '434 patent, the '926 application, the '443 application, and the '753 application, to Conagen, as well as any foreign patents issuing from or deriving from the U.S. Applications and/or Conagen's Intellectual Property.

114.    As a result of Defendants' actions, Plaintiff has been irreparably harmed and damaged and will continue to be unless Defendants are enjoined by the Court.

115.    In particular, the ability of Conagen to monetize the patent rights of the '434 patent, the '926 application, the '443 application, the '753 application, has been permanently decreased, if not eliminated, in that they may be unable to license the patent, or enforce or defend the patent in litigation, given Defendants' improper actions in filing the patent application and during patent prosecution, including the improper claims of patent ownership.

116.    Plaintiff has no adequate remedy at law.

## COUNT III:
## VIOLATION OF THE MISSOURI UNIFORM TRADE SECRETS ACT ("MUTSA")

117.    Plaintiff incorporates, repeats, and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 116 of the Complaint.

118.    The Missouri Uniform Trade Secrets Act ("MUTSA"), MO. Rev. Stat. §§ 417.450 to 417.467, provides injunctive relief for the actual or threatened misappropriation of trade secrets. *Id.* at § 417.455.

119.    Under the MUTSA, a Plaintiff is also entitled to recover damages for the misappropriation of trade secrets, which can include both the actual loss caused by the misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss. *Id.* at § 417.457(1).

120.    If the misappropriation is deemed "outrageous because of the misappropriator's evil motive or reckless indifference to the rights of others, the Court may award punitive damages." *Id.* at § 417.457(2).

121.    The Conagen Highly Confidential Technology, including Conagen's secret processes that the Defendants included in the patent applications leading to and stemming from the '434 patent, the '443 application, and the '753 application, constitute trade secrets within the meaning of the MUTSA.

122.    Upon information and belief, Defendants misappropriated Conagen Highly Confidential Technology under the MUTSA when Defendants included information regarding this technology in patent applications that were filed beginning on March 23, 2015 with the filing of the '154 priority application and continuing with the filing of the '951 application on September 22, 2017, which resulted in the '434 patent.

123.    Upon information and belief, Defendants misappropriated Conagen Highly Confidential Technology under the MUTSA when Defendants included information regarding this technology in patent applications that were filed beginning on October 18, 2016 with the filing of the '599 priority application and continuing with the filing of the '443 application on September 1, 2017.

124.    Upon information and belief, Defendants misappropriated Conagen Highly Confidential Technology under the MUTSA when Defendants included information regarding this

technology in patent applications that were filed beginning on February 11, 2019 with the filing of the '078 priority application and continuing with the filing of the '753 application on February 11, 2020, which published on August 20, 2020.

125.   Defendants continue to misappropriate Conagen Highly Confidential Technology under the MUTSA with the recent filing of the '753 application on February 11, 2020, the '926 application on June 13, 2019, as well as the '443 application on September 1, 2017, all of which are currently pending and under examination before the USPTO.

126.   Defendants misappropriated these trade secrets within the meaning of the MUTSA.

127.   Conagen owns the trade secrets misappropriated by Defendants.

128.   All of the Conagen Highly Confidential Technology trade secret information constitutes protectable trade secret information belonging solely to Conagen.

129.   Conagen derives significant economic value, both actual and potential, from its Highly Confidential Technology trade secret information not being generally known to, nor readily ascertainable by, other individuals or companies in the industry who could derive significant economic value from its disclosure or use of the information.

130.   Conagen Highly Confidential Technology trade secret information is not information that is generally known outside of Plaintiff's business.

131.   Conagen Highly Confidential Technology trade secret information, as identified and described herein, is not generally and commonly known by Plaintiff's employees and is subject to reasonable efforts to maintain its confidentiality through restricted access to lab notebooks and projects, limited disclosure of information externally, agreed confidentiality, password protections on computers, education of staff regarding confidentiality procedures, facility security cameras and building passes, and other safeguarding measures.

132.    Conagen has expended significant time, effort, and financial resources in obtaining and developing the Conagen Highly Confidential Technology over many years; the amount of time and expense that it would take for a competitor to independently acquire or duplicate the knowledge and information possessed by Conagen would be significant.

133.    Conagen Highly Confidential Technology trade secret information was revealed to and/or developed in conjunction with Wang during his employment with Conagen under the auspices of trust, promises of non-disclosure, and in the context of the parties' confidential relationship.

134.    Wang (and his successor employer Arch) was aware of the existence, value, and secret nature of the Conagen Highly Confidential Technology trade secret information.

135.    The Conagen Highly Confidential has been used, released, or disclosed by Wang and/or Arch through improper means, with an improper purpose, and in conflict with the business interests of Conagen, without the consent or authorization of Conagen and without lawful justification.

136.    As a direct and proximate result of Defendants' violations of the MUTSA, Conagen has incurred and is likely further to incur damages.

137.    Defendants' unlawful misappropriation and release of the Conagen Highly Confidential Technology trade secret information has and will continue to have a negative financial impact to Plaintiff's business.

138.    In misappropriating the Conagen Highly Confidential Technology, Wang and Arch have acted willfully, wantonly, maliciously, and with reckless disregard for the rights of Conagen.

139.    Plaintiff Conagen will continue to suffer irreparable financial harm and damage if the misappropriation is not enjoined.

140.    Conagen seeks a judgment against Wang and/or Arch for actual and punitive damages, an award of unjust enrichment, permanent injunctive relief, and such further relief as the Court deems just and proper.

## COUNT IV: BREACH OF CONTRACT BY WANG

141.    Plaintiff incorporates, repeats, and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 140 of the Complaint.

142.    Wang signed and entered into an Employment Agreement with Plaintiff that included, among other things, a confidentiality agreement.

143.    Wang worked as a senior scientist at Conagen, for about two years, where he regularly worked on behalf of Plaintiff, and was privy to Conagen Highly Confidential Technology trade secret information.

144.    Plaintiff honored the parties' Employment Agreement.

145.    Plaintiff gave valuable consideration in exchange for Wang's obligation not to disclose Conagen Highly Confidential Technology trade secret information.

146.    Wang breached his agreement with Conagen by later disclosing Conagen Highly Confidential Technology trade secret information that he acquired during his employment with Conagen.

147.    Wang's unlawful disclosure and release of Conagen Highly Confidential Technology trade secret information has already caused a significant negative impact to Conagen's business, and Conagen continues to suffer irreparable harm and damage as a proximate cause of such disclosure and breach.

148.    Conagen seeks a judgment against Wang for compensatory damages, prejudgment interest, permanent injunctive relief, and such other relief as the Court deems just and proper for breach of his Employment Agreement.

## COUNT V: BREACH OF FIDUCIARY DUTY BY WANG

149.    Plaintiff incorporates, repeats, and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 148 of the Complaint.

150.    As a senior scientist at Conagen, Wang owed Conagen a fiduciary duty, which included a duty to act in good faith and in its best interests, to exercise independent professional judgment and undivided loyalty on its behalf, to pursue its lawful objectives, to represent no adverse interests and to make full disclosure to Conagen in a timely fashion of all known information that was important and material to the corporation's affairs.

151.    Conagen Highly Confidential Technology was shared with and acquired by Wang under the auspices of trust, promises of non-disclosure, and in the context of the parties' confidential relationship.

152.    Conagen Highly Confidential Technology was to be used solely for the purposes of supporting and developing Conagen's businesses.

153.    Instead, Wang left Conagen and started his own company using Conagen Highly Confidential Technology in competition with Conagen. Conagen Highly Confidential Technology trade secret information has been used, released, or disclosed through improper means, with an improper purpose, and in conflict with the business interests of Conagen, without the consent or authorization of Conagen and without lawful justification.

154.    Wang's unlawful misappropriation and release of Conagen Highly Confidential Technology has already caused a significant negative impact to Conagen's business, and Conagen continues to suffer irreparable harm and damage.

## COUNT VI: CONVERSION BY WANG

155.    Plaintiff incorporates, repeats, and realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 154 of the Complaint.

156.    Under Missouri law, conversion occurs where there is an "unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Emerick v. Mutual Benefit Life Ins. Co*., 756 S.W.2d 513, 523 (Mo.1988).

157.    As detailed and averred above, Conagen is the owner of tangible property and/or entitled to possession of such property, in the form of Conagen Highly Confidential Technology trade secret information, confidential information, and any products derived therefrom ("Conagen Tangible Property").

158.    While employed at Conagen and upon leaving Conagen, Wang improperly took possession of Conagen Tangible Property with the intent to exercise control over it.

159.    Based on information and belief, Wang improperly and without Conagen's permission took one or more of the following Conagen Tangible Property materials:

a)  one or more recombinant *Yarrowia lipolytica* strains including nucleic acid expression construct(s) that include one or more of the following: a lycopene epsilon cyclase gene from *Lactuca sativa* (LsLCYe); a carotene cleavage dioxygenase gene from *Osmanthus fragrans* (OfCCD1); an intron-containing transcriptional elongation factor TEF promoter (TEFIN); an export protein promoter (EXP1); and a FPPS::GGPPS fusion gene; and/or

b)  one or more nucleic acid expression constructs that include one or more of the following: a lycopene epsilon cyclase gene from *Lactuca sativa* (LsLCYe); a carotene cleavage dioxygenase gene from *Osmanthus fragrans* (OfCCD1); an intron-containing transcriptional elongation factor TEF promoter (TEFIN); an export protein promoter (EXP1); and a FPPS::GGPPS fusion gene.

31

160.    Wang's physical taking of Conagen Tangible Property was wantonly purposeful, and the tangible property in question has been and continues to be used by defendants Wang and Arch in a manner indicating that defendants believe they have a claim of ownership right in opposition to the ownership of such tangible property by Conagen.

161.    Wang has deprived and continues to deprive Conagen of the right to use and possess Conagen Tangible Property.

162.    Conagen does not have a copy of the Conagen Tangible Property in question.

163.    Wang's unlawful theft of Conagen Tangible Property has already caused significant damages to Conagen, including at least:

a) loss of costs associated with development of the Conagen Tangible Property;

b) loss of employee time associated with development of the Conagen Tangible Property;

c) loss of use of the Conagen Tangible Property;

d) loss of sales/income associated with the Conagen Tangible Property;

e) loss of goodwill associated with the Conagen Tangible Property; and

f) pecuniary loss associated with a need to recreate the Conagen Tangible Property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Conagen requests that this Court enter judgment in their favor and against Defendants Wang and Arch for the following:

A. A preliminary and permanent injunction restraining Defendants, their employees, agents, representatives, and all persons in participation with Defendants, from:

a. making, using, offering for sale, or selling the inventions disclosed and/or claimed in U.S. Patent No. 10,364,434;

b. prosecuting U.S. Patent Application No. 16/439,926 or filing or prosecuting any pending U.S. Application related to U.S. Pat. No. 10,364,434 or U.S. Patent Application No. 16/439,926, or, alternatively, from allowing any such U.S. Application to issue or to become abandoned without filing a continuation application or other timely, complete filing in order to protect any remaining patentable subject matter Plaintiff may be able to secure;

c. prosecuting U.S. Patent Application No. 15/694,443 or filing or prosecuting any pending U.S. Application related to U.S. Patent Application No. 15/694,443, or, alternatively, from allowing any such U.S. Application to issue or to become abandoned without filing a continuation application or other timely, complete filing in order to protect any remaining patentable subject matter Plaintiff may be able to secure; and

d. prosecuting International Application No. PCT/US2020/017753 or filing or prosecuting any pending U.S. Application related to International Application No. PCT/US2020/017753, or, alternatively, from allowing any such U.S. Application to issue or to become abandoned without filing a continuation application or other timely, complete filing in order to protect any remaining patentable subject matter Plaintiff may be able to secure.

B. A preliminary and permanent injunction ordering Defendants, their employees, agents, representatives, and all persons in participation with Defendants to:

a. assign all rights they may have in U.S. Pat. No. 10,364,434, U.S. Patent Application No. 16/439,926, U.S. Patent Application No. 15/694,443, and International Application No. PCT/US2020/017753, to Plaintiff;

33

b.  cease representing that they are the owners of U.S. Pat. No. 10,364,434, U.S. Patent Application No. 16/439,926, U.S. Patent Application No. 15/694,443, International Application No. PCT/US2020/017753, and/or the Intellectual Property disclosed and/or claimed in such patent, applications, or related applications; and

c.  cease disclosing any remaining Conagen Highly Confidential Technology trade secret information to the public.

d.  cease using any Conagen Tangible Property; and

e.  identify, preserve and return all Conagen Tangible Property, including any tangible property derived or developed therefrom.

C.      A preliminary and permanent injunction ordering Wang to abide by the terms of his Employment Agreement with Plaintiff, including, but not limited to:

a.  prohibiting Wang from directly or indirectly using or disclosing Conagen Highly Confidential Technology, Conagen Tangible Property and other confidential information; and

b.  prohibiting Wang from directly or indirectly divulging or otherwise making any use of Conagen Highly Confidential Technology trade secret information, Conagen Tangible Property or other trade secrets.

D.  A preliminary and permanent injunction ordering Defendant Arch to:

a.  cease and desist from acting in concert with, engaging in, tolerating willfully, acquiescing in, or accepting Wang's violation of his confidentiality obligations to Conagen;

    b.  cease and desist from directly or indirectly using or disclosing Conagen Highly Confidential Technology trade secret information and/or Conagen Tangible Property; and

    c.  cease and desist from selling or offering for sale any product that has resulted from the misappropriation of Conagen Highly Confidential Technology and/or Conagen Tangible Property.

E.  Enter a preliminary and permanent injunction ordering Defendants to:

    a.  return to Plaintiff any and all Conagen Highly Confidential Technology trade secret information, Conagen Tangible Property, other confidential information, and any products derived therefrom in the custody, control, or possession of any Defendant.

    b.  identify any of Plaintiff's trade secret or confidential information that has been disclosed by anyone and the names of any individual to whom such a disclosure was made; and

    c.    preserve and retain all documents and electronically stored information potentially relevant to the claims raised in Plaintiff's Complaint.

F.  Judgment in their favor on all Counts;

G.  An award of damages in an amount to be proven as to each Count at trial;

H.  Costs, expenses, and attorneys' fees associated with the prosecution of this action;

I.  Costs and expenses that Conagen may incur in reproducing any Conagen Tangible Property taken by Wang which is not duly returned;

J.  Pre-judgment and post-judgment interest;

K.  Punitive damages on all Counts under which the Plaintiff is entitled to; and

L.  All other relief to which the Plaintiff may be entitled.

Respectfully submitted,

Dated: September 15, 2020       GREENSFELDER, HEMKER & GALE, P.C.

By     /s/ Mary Ann L. Wymore
         Mary Ann L. Wymore, MO #44061
         mlw@greensfelder.com
         Jared S. Manse, Ph.D., MO #63058
         jmanse@greensfelder.com
         10 South Broadway, Suite 2000
         St. Louis, Missouri 63102
         Telephone: (314) 241-9090
         Facsimile: (314) 241-8624

         *Attorneys for Plaintiff Conagen, Inc.*

**OF COUNSEL:**
Kevin E. Noonan, Ph.D.
Paul S. Tully, Ph.D.
John E. Conour, Ph.D.
Nicole E. Grimm, M.S.
McDONNELL BOEHNEN HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
(312) 913-0001

1873829v1